UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MELISSA OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:22-cv-00625-SRC |
| | ) | |
| BOSTON SCIENTIFIC CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

### Memorandum and Order

Melissa Owens sued Boston Scientific Corporation and its sales representative Shawn Lynch in Missouri state court, alleging that Boston Scientific defectively designed and manufactured its Obtryx II Sling System and that Boston Scientific and Lynch failed to warn about the defects. Doc. 4. Boston Scientific removed to this Court, arguing that Owens had fraudulently joined Lynch to defeat diversity, Doc. 1; Lynch moved to dismiss the one count against him, Doc. 7; and Owens moved to remand, Doc. 9. Because Owens's claim against Lynch relies on conclusory allegations, the Court finds no reasonable basis in fact or law for holding Lynch liable. The Court therefore denies Owens's [9] motion for remand and grants Lynch's [7] motion to dismiss count 4.

**I.     Background**

Owens filed a four-count petition in Missouri state court regarding alleged defects in the Obtryx II, which she had surgically implanted in August 2016, and from which she allegedly suffered side-effects. *See generally* Doc. 4. In count 4, Owens sues Lynch for negligent failure to warn, alleging that Lynch participated in the sale and implementation of Owens's Obtryx II

device, that his job included advising hospitals and surgeons on Obtryx II's risks, and that he knew or should have known of the defects that harmed Owens. Doc. 4 at pp. 6–7.

Boston Scientific removed the case, invoking diversity jurisdiction and arguing that Owens had fraudulently joined Lynch, whose Missouri citizenship would otherwise defeat diversity. Doc. 1 at pp. 2–7. Lynch then moved to dismiss for failure to state a claim, Doc. 7, and Owens moved to remand, Doc. 9. The parties fully briefed both motions. Docs. 8, 10, 13–15.

**II.     Standard**

A defendant may remove to federal court any state-court civil action over which the federal court could exercise original jurisdiction. 28 U.S.C. § 1441(a). "The [removing] defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence." *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010). Because "[t]he threshold requirement in every federal case is jurisdiction," the Eighth Circuit has admonished district courts "to be attentive to a satisfaction of jurisdictional requirements in all cases." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citation omitted). "Federal courts are to resolve all doubts about federal jurisdiction in favor of remand and are strictly to construe legislation permitting removal." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (quotation marks omitted). But when a federal court does have jurisdiction over a case properly before it, it has a "virtually unflagging obligation to exercise it." *Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1060 (8th Cir. 2020) (en banc) (quotation marks omitted).

**III.    Discussion**

In its notice of removal, Boston Scientific argues that the Court could have exercised original jurisdiction over this case under 28 U.S.C. § 1332(a)(1), which gives district courts

"original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States."  Diversity jurisdiction requires complete diversity of citizenship among the parties, meaning "no defendant holds citizenship in the same state where any plaintiff holds citizenship."  *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)).  "In the case of a removed action, diversity [of citizenship] must exist both when the state petition is filed and when the petition for removal is filed."  *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011) (quoting *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001)).

Here, Lynch and Owens were both Missouri citizens at the time of filing.  *See* Doc. 1 at ¶ 10 ("Plaintiff [is] a citizen of Missouri . . . ."); Doc. 1-3 at ¶ 2 ("I[, Shawn Lynch,] currently reside in and am a citizen of Dardenne Prairie, Missouri.").  Unless an exception to the "time-of-filing" rule applies, this lack of diversity defeats jurisdiction.  Defendants argue that one such exception—fraudulent joinder—applies here.  The Court agrees.

"[A] plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'"  *Knudson*, 634 F.3d at 976 (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)).  To prove fraudulent joinder, a defendant must show that the plaintiff's claim against the non-diverse defendant has "no reasonable basis in fact and law."  *Knudson*, 634 F.3d at 977 (citing *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)). In other words, "if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained."  *Knudson*, 634 F.3d at 980 (quoting *Filla*, 336 F.3d at 810).

3

On the other hand, "joinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" *Knudson*, 634 F.3d at 980 (quoting *Filla*, 336 F.3d at 811). This standard "require[s] the defendant to do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion." *Knudson*, 634 F.3d at 980 (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010)). If a "colorable" cause of action exists, then the joinder is not fraudulent. *Filla*, 336 F.3d at 810. The Court resolves all facts and ambiguities in the plaintiff's favor, and if the sufficiency of the complaint is questionable, the "better practice" is to remand the case and leave the question for the state court. *Id.* at 811; *see also Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007) ("The relevant inquiry in analyzing fraudulent joinder . . . focuses only on whether a plaintiff 'might' have a 'colorable' claim under state law." (internal citation omitted)).

Defendants argue that Owens fraudulently joined Lynch, the only non-diverse defendant, because Owens does not have a colorable negligence claim against him. Doc. 14 at p. 1. Under Missouri law, a negligence claim requires (1) a duty of care owed by the defendant to the plaintiff, (2) a breach of that duty, and (3) an injury proximately caused by the breach. *See Cleek v. Ameristar Casino Kansas City, LLC*, 47 F.4th 629, 635–36 (8th Cir. 2022) (applying Missouri law). The Court discerns two distinct theories of potential liability in Owens's argument that Missouri law could impose liability on Lynch. Doc. 8 at pp. 2–4. First, Owens implies that, by participating in the implantation process, Lynch assumed a duty to advise the implanting physician with reasonable care and that he breached this duty by not warning the physician about the risks he knew or should have known about. *Id.* at p. 2. Second, Owens implies that Lynch had an independent duty, as a "reasonably prudent seller" of the device, to

4

warn users of the device about dangers he "should have discovered before selling the product" and that, again, Lynch breached this duty by not warning the physician of the risks he knew or should have known about. *Id.* at p. 3. Both theories rely on the allegation that Lynch "knew or should have known" about the risks associated with the Obtryx II. Doc. 4 at p. 7. Because this allegation is conclusory, both theories fail to show a reasonable basis for Lynch's liability under Missouri law.

> A. **Owens's allegation that Lynch "knew or should have known" about the defects in the Obtryx II device is conclusory.**

In defending the sufficiency of the allegations in her petition, Owens assumes that state pleading standards control. *See* Doc. 8 at p. 7. But even in cases removed from state court, federal courts "apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013). And the same pleading standards apply to allegations used to oppose a claim of fraudulent joinder. *See Henson v. Union Pac. R.R. Co.*, 3 F.4th 1075, 1080 (8th Cir. 2021). Thus, if a plaintiff relies on "conclusory allegations, which are insufficient to state a claim against [the non-diverse defendant,] . . . [d]ismissal on the basis of fraudulent joinder [is] proper." *Id.*; *see also Block v. Toyota Motor Corp.*, 665 F.3d 944, 950 (8th Cir. 2011) (holding that "conclusory allegations in the complaint . . . are insufficient" to establish a reasonable basis for liability under state law).

The key allegation in Owens's petition regards Lynch's actual or constructive knowledge of the alleged defects: "On or before the date of implantation, 8/11/16, Defendant Lynch knew or had [sic] should have known of the following dangerous conditions of the Obtryx II . . . ." Doc. 4 at p. 7. The petition contains no allegations of specific facts that would support this allegation. Without more, Owens's "bare assertion[]" of Lynch's actual or constructive

5

knowledge "amount[s] to nothing more than a formulaic recitation of [an] element[]" needed to support her negligence claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (internal quotation marks and citations omitted).  "As such, the allegation[] [is] conclusory and not entitled to be assumed true."  *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007)).

The Court's decision comports with other cases from this circuit treating bare allegations that a defendant "knew or should have known" a key fact as conclusory.  *See Block*, 665 F.3d at 950 ("[C]onclusory allegations in the complaint that 'the Defendants' knew of the alleged defects are insufficient to show that [the nondiverse defendant] had actual knowledge as required [to defeat a finding of fraudulent joinder]."); *Hobbs v. Wyeth, Inc.*, No. 3:04-cv-0176, 2004 WL 6005569, at *6 (E.D. Ark. July 13, 2004) (finding fraudulent joinder of non-diverse pharmaceutical sales representative and denying motion to remand because plaintiff "conclusively alleg[ed] that [the sales representative] 'knew or should have known' of the dangers of the diet drugs"); *In re Baycol Prods. Litig.*, No. MDL 1431(MJD), 02-4835, 2003 WL 21223842, at *2 (D. Minn. May 27, 2003) (finding that "conclusory allegations" that a doctor "knew or should have known" of drug's risks could "not defeat a finding of fraudulent joinder"); *cf. Strickland v. Brown Morris Pharmacy, Inc.*, No. 96-815, 1996 WL 537736, at *2 (E.D. La. Sept. 20, 1996) ("[N]o facts have been avowed which would go to show that [the non-diverse defendant] knew or should have known that [the product] was an unsafe product in its normal and intended use.  All the plaintiff has done in her petition is make conclusory allegations or legal conclusions put forward as factual findings which do not go toward establishing a cause of action.").  Owens has alleged no facts that would show Lynch's actual or constructive knowledge of the Obtryx II's defects.  Thus, in evaluating her theories for why the Court should

6

hold Lynch liable, the Court must ignore her bare, conclusory allegation that Lynch "knew or should have known" about those defects.

> **B.     Owens has no reasonable basis for holding Lynch liable under a theory of "assumed duty."**

Owens first argues that Lynch assumed and breached a duty to advise her physician with reasonable care by participating in the implantation and not warning about the defects.  Doc. 8 at p. 2.  Owens grounds this theory in two cases applying Missouri law in which medical device representatives actively advised surgeons during implantation procedures.  *See Westmoreland v. Medtronic, Inc.*, No. 17-cv-01626, 2017 WL 5132669, at *1 (E.D. Mo. Nov. 6, 2017) (applying Missouri law) (denying sales representative's motion to dismiss); *Mahler v. Biomet, Inc.*, No. 16-cv-00029, 2017 WL 3262531, at *1 (N.D. Ind. July 31, 2017) (applying Missouri law) (finding that sales representative was not fraudulently joined).  The *Westmoreland* court explained this "assumed duty" theory of liability under Missouri law:

> Even if one does not ordinarily owe a particular duty of care, one can assume such a duty when gratuitously undertaking to render services if failure to exercise reasonable care in that undertaking would foreseeably increase the risk of harm. Thus, even if medical device companies generally owe no duty to patients because they do not provide direct care, they can assume such a duty by volunteering to offer assistance to a patient's treating physician.

2017 WL 5132669, at *3 (internal citations omitted).  Assuming *Westmoreland* and *Mahler* accurately apply Missouri law (as Owens argues, Doc. 8 at p. 2), this theory would require Owens to show that Lynch assumed a duty by actively assisting or advising her physician during the surgery and that he breached that duty by not exercising reasonable care in rendering assistance or advice.

Owens cannot establish that that Lynch either assumed or breached any duty.  First, Owens' petition provides no reasonable basis for concluding that Lynch assumed a duty during her procedure because, unlike the complaints in *Westmoreland* and *Mahler*, it contains no

7

allegations that Lynch actively advised Owens's physician during the surgery.  *See generally* Doc. 4.   True, Owens alleges that Lynch "participated in the sale and implantation of the Obtryx II," *id.* at p. 11, and that "Lynch[']s job included advising hospitals and surgeons on the risks and benefits of the Obtryx II," *id.* at p. 12.   But a general allegation that Lynch's job included giving advice about "the risks and benefits" of the device does not give rise to an inference that Lynch actively advised the physician during the surgery.   At most, these allegations, taken together, might imply that Lynch advised Owens's doctor about the risks and benefits of the device at some point (though this still requires an inference from the general allegation that it was "Lynch's job" to give such advice).

In any case, these allegations fall far short of the concrete allegations regarding advice in *Westmoreland* and *Mahler*.   In *Westmoreland*, the plaintiff included detailed factual allegations about how the sales representative's advice to the implanting physician caused the victim's death:

> Plaintiff alleges that Decedent's surgeon selected the Medtronic 25 mm graft after [the sales representative] performed an Endovascular Stent Planning procedure for the purpose of sizing Decedent's aortic anatomy and recommended the Endurant II 25 mm graft, even though use of a Medtronic graft was contraindicated and Medtronic's own sizing documents indicated the 25 mm graft was too large for Decedent's aorta. Following the recommendations of [the sales representative], Decedent's surgeon attempted to place the contraindicated graft, and her left renal artery was ripped apart, causing Decedent's death.

2017 WL 5132669, at *1 (cleaned up).   The *Mahler* plaintiffs also included a host of specific allegations regarding the sales representative's advice to the implanting physician:   "he was in the operating room during Ms. Mahler's implant surgery [and] advised the surgeon as to the implants' safety and efficacy"; he "affirmatively took on the task of advising the surgeon as to the risks of the implanted device"; and he "advised Plaintiff's surgeon Dr. Dan Martin as to the safety and efficacy of the implants" during the surgery.   2017 WL 3262531, at *2–3.   As the

8

district court noted, "ensuring the safe installation of the product seems to be the main reason [the sales representative] was in the operating room. There seems to be a colorable claim for negligence if he didn't advise the surgeon correctly." *Id.* Thus, Owens, whose petition lacks allegations that Lynch actually advised Owens's surgeon during the implantation, has no colorable argument that Lynch assumed a duty.

Owens also lacks a colorable argument that Lynch breached a duty, even if he did assume one. To show that Lynch breached a duty, Owens would need to allege facts in her petition showing that he "fail[ed] to exercise reasonable care to perform [his] undertaking." *Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC*, 587 S.W.3d 647, 655 (Mo. 2019) (quoting *Hoover's Dairy, Inc. v. Mid-Am. Dairymen, Inc.*, 700 S.W.2d 426, 433 (Mo. 1985)). In *Westmoreland* and *Mahler*, there was a reasonable basis for holding that the sales representatives did not exercise reasonable care because the courts looked to factual allegations showing that the sales representative had actual or constructive knowledge of the risks involved and ignored those risks. In *Westmoreland*, for example, the complaint included allegations that "use of a Medtronic graft was contraindicated and Medtronic's own sizing documents indicated the 25 mm graft was too large for Decedent's aorta"; that "[the sales representative], and Medtronic as his employer, were negligent because they recommended a contraindicated graft"; and that "Defendants [including the sales representative] knowingly recommend[ed] a contraindicated graft procedure and a graft that was clearly too large . . . according to [Medtronic's] own guidelines." 2017 WL 5132669, at *1 (internal quotation marks omitted throughout). Similarly, the *Mahler* court noted that the plaintiffs "alleg[ed] facts supporting [the sales representative]'s knowledge of the risks of the implant." 2017 WL 3262531, at *3. Precisely because the sales representative knew about these risks, the court found that "[t]here seems to be a colorable claim for negligence if he didn't

9

advise the surgeon correctly." *Id.* In each of these cases, there was a colorable argument that the sales representative failed to exercise reasonable care because factual allegations showed that he knew or had reason to know about the risks involved in the procedure. Here, even if Lynch advised during the procedure, there are no factual allegations showing that he knew or should have known about the risks associated with the Obtryx II. Thus, Owens has no colorable argument that he acted without reasonable care.

Significantly, unlike *Westmoreland*, where the sales representative gave specific advice regarding implantation that contradicted his own company's guidelines, *see* 2017 WL 5132669, at *1, no allegations here suggest that Lynch gave *any* specific advice affecting the manner of implantation. Instead, Owens seems to base her claim on Lynch's presence at a perfectly routine implantation of what later turned out to be a defective product. But beyond her conclusory allegations that Lynch "knew or should have known" that the product design was defective, Owens alleges nothing to show that Lynch acted without reasonable care during her procedure. Thus, the Court finds no reasonable basis in law or fact for holding Lynch liable under a theory of assumed duty.

  **C.** **Owens has no reasonable basis for holding Lynch liable under a theory that he is a "seller."**

Owens supports her second theory of liability by identifying Lynch as a negligent "seller" of the Obtryx II device. She relies on *Hutchen v. Wal-Mart Stores East I, LP*, where the court stated, "[i]t is . . . well established under Missouri law . . . that a seller may be held liable in negligence for injuries caused by a defect in a product which 'a reasonably prudent seller should have discovered . . . before selling the product to the consumer.'" 555 F. Supp. 2d 1013, 1018 (E.D. Mo. 2008) (third ellipsis in original) (quoting *Dorman v. Bridgestone/Firestone, Inc.*, 992 S.W.2d 231, 239 (Mo. Ct. App. 1999)). Under this theory, Owens argues that Lynch could be

10

liable under Missouri law because "a reasonably prudent seller" in his position would have "discovered" the harmful defects in the Obtryx II "before selling the product" to Owens. Doc. 8 at p. 3.

Even assuming that an individual employee of a device manufacturer can qualify as a "seller" in this context, this theory of liability suffers the same flaw as the assumed-duty theory—Owens makes no factual allegations showing how or why a reasonably prudent seller in Lynch's position should have discovered the flaws in the Obtryx II device. As discussed above, Owens's only allegation regarding Lynch's knowledge of the defects is conclusory. None of the petition's allegations, taken as true, establish that Lynch, as an individual employee of the device manufacturer, should have discovered and warned about the defects in the Obtryx II. Thus, *Hutchen* stands in stark factual contrast. In *Hutchen*, a Wal-Mart store manager

> was negligent because she "knew or should have known" that contaminated spinach had been found in other states and stores and had been recalled in other states and stores, but she failed to remove contaminated spinach from the Dexter Wal-Mart shelves and failed to warn customers of possible contamination.

555 F. Supp. 2d at 1019. If it was true that defective spinach had been found and recalled in other states and stores (concrete, factual allegations), then the plaintiff had a reasonable basis for arguing that a reasonably prudent Wal-Mart manager would have removed her own, potentially contaminated spinach from the shelves.

But the same does not apply to a reasonably prudent Obtryx II sales representative. For this case to fit under *Hutchen*'s negligent-failure-to-remove-spinach theory, Owens would need to show a pattern of harmful results from the Obtryx II that preexisted her surgery and was sufficiently widespread that an individual sales representative should have known about it and stopped her physician from implanting the device. Owens lacks any such allegations or any other factual allegation showing how or why Lynch should have known about the defects.

11

And with good reason. Lynch is merely a sales representative employed by Boston Scientific. Doc. 4 at p. 6. In her three counts against Boston Scientific, Owens includes many allegations regarding Boston Scientific's allegedly defective design and manufacture of the Obtryx II device. *Id.* at pp. 1–6. Yet nowhere does she allege that even Boston Scientific itself knew or should have known about the safety risks associated with the Obtryx II before her surgery. *See id.* According to this theory, then, Boston Scientific defectively designed, manufactured, and marketed the Obtryx II without knowing about its safety risks, but its employee Lynch knew or should have known about those risks. This strains credulity.

Both of Owens's theories of negligence liability rely on the bare, conclusory allegation that "[o]n or before the date of implantation," Lynch (unlike, it seems, anyone else at Boston Scientific) "knew or should have known of the . . . dangerous conditions of the Obtryx II." *Id.* at p. 7. As such, there is no reasonable basis in law or fact for her claim against Lynch, and "[d]ismissal on the basis of fraudulent joinder [is] proper." *Henson*, 3 F.4th at 1080. The Court denies Owens's motion to remand.

Having found that Owens fraudulently joined Lynch, the Court necessarily finds that Owens failed to state a claim against him. Lynch moves to dismiss Owens's negligence claim against him "because Missouri does not recognize a claim for failure to warn against a prescription medical device sales representative." Doc. 7 at p. 1. Without reaching that legal question, the Court dismisses Owen's claim against Lynch, because it does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As discussed above, any theory of negligence liability hinges on the allegation that Lynch "knew or should have known" about the alleged defects in the Obtryx II, and this allegation is merely "a legal conclusion couched as a factual

12

allegation." *Twombly*, 550 U.S. at 555.  And the Court applies the same pleading standard to sift factual from conclusory allegations when evaluating a 12(b)(6) motion as it does when evaluating a claim of fraudulent joinder.  *Henson*, 3 F.4th at 1080.  Because the Court has already found that this deficiency leaves Owens's claim against Lynch with no reasonable basis in law or fact, this deficiency means she has failed to state a claim upon which relief may be granted and the Court grants the motion to dismiss.

**IV.     Conclusion**

Because Owens fraudulently joined Lynch, the Court has subject-matter jurisdiction under 28 U.S.C. § 1332 and denies Owens's [9] Motion to Remand.  Further, because Owens has failed to state a claim against Lynch, the Court grants Lynch's [7] Motion to Dismiss and dismisses count 4 of Owens's [4] petition.

So Ordered this 23rd day of November 2022.

                                                                               *SL R. CR*
                                                        _____
                                                             STEPHEN R. CLARK
                                                             UNITED STATES DISTRICT JUDGE